UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cr-32-KDB-SCR-1

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **LARRY ELWOOD STEPTOE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 56].

I.  BACKGROUND

The Defendant was charged with: conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); distributing a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)-(C) (Counts Two through Twenty and Twenty-Two through Twenty-Five); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Twenty-One). [Doc. 16 (Superseding Indictment)]. The Government filed a Notice of intent to rely on two prior felony convictions for a serious drug offense pursuant to 21 U.S.C. § 851. [Doc. 13 (§ 851 Notice)].

The Defendant pleaded guilty to Counts Seven and Eight and admitted his guilt as charged of those offenses in exchange for the Government's dismissal of the remaining counts and for its withdrawal of the § 851 Notice. [Doc. 21 at ¶¶ 1-3 (Plea Agreement)]. The Plea Agreement states that the offenses charged in Counts Seven and Eight are punishable as follows:

1

Count Seven: in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); a minimum term of five years, a maximum term of forty years, a $5,000,000 fine or both, and at least four years of supervised release. If, by the date that the defendant pleads guilty, the United States has filed notice of one prior serious drug felony conviction or one prior serious violent felony conviction, the statutory penalties are a minimum term of ten years, a maximum term of life imprisonment, an $8,000,000 fine, or both, and at least eight years of supervised release.

Count Eight: in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); a minimum term of ten years, a maximum term of life imprisonment, a $10,000,000 fine or both, and at least five years of supervised release. If, by the date that the defendant pleads guilty, the United States has filed notice of one prior serious drug felony conviction or one prior serious violent felony conviction, the statutory penalties are a minimum term of fifteen years and a maximum term of life imprisonment, a $20,000,000 fine, or both, and at least ten years of supervised release. If, by the date that the defendant pleads guilty, the United States has filed notice of two prior serious drug felony convictions or two prior serious violent felony convictions, the statutory penalty is mandatory twenty-five years imprisonment and a maximum of life imprisonment.

[Id. at ¶ 6].

The parties agreed to jointly recommend: the Defendant possessed and distributed no less than 50 grams of methamphetamine (actual) and no less than 28 grams of a mixture and substance containing a detectable amount of cocaine base; the plea is timely for purposes of acceptance of responsibility, if applicable; the parties may argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense levels; the parties may seek a departure or variance from the applicable guideline range as determined by the Court; and the United States will inform the Court and the probation office of all facts pertinent to the sentencing process. [Id. at ¶ 9]. The Plea Agreement provides that the career offender or armed career criminal provision may be used in determining the sentence, if applicable. [Id. at ¶ 9(d)].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely

sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Defendant would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 8]. The Plea Agreement further provides that a breach, including an attempt to withdraw the guilty plea, would result in the following consequences:

> In addition to any other remedy available in law, the defendant's breach: (a) will relieve the United States of its obligations under the Plea Agreement, without relieving the defendant of the defendant's obligations under the Plea Agreement or permitting the defendant to withdraw the guilty plea; (b) may constitute the defendant's failure to accept responsibility under U.S.S.G. § 3E1.1; and (c) will permit the United States to proceed on any dismissed, pending, superseding or additional charges and, if applicable, any Information pursuant to 21 U.S.C. § 851.

[Id. at ¶¶ 4, 5].

The Defendant stipulated that there is a factual basis for the guilty plea and that he read and understood the written Factual Basis, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 12]. He agreed that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts prior to or at sentencing. [Id. at ¶ 13]. The Plea Agreement further provides:

> The defendant acknowledges that Rule 11(f) and Fed. R. of Evid. 408 and 410 are rules that ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions. The defendant knowingly and voluntarily waives these rights and agrees that any statements made in the course of the defendant's guilty plea or this Plea Agreement (in part or in its entirety, at the sole discretion of the United States) and the Factual Basis will be admissible against the defendant for any purpose in any criminal or civil proceeding if the defendant fails to enter,

3

or attempts to withdraw, the defendant's guilty plea, or in any post-conviction proceeding challenging the knowing or voluntary nature of the guilty plea.

[Id. at ¶ 15].

The Plea Agreement sets forth the other rights that the Defendant was waiving by pleading guilty, including the rights: to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶ 16]. The Plea Agreement acknowledges that Defendant had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 17-18]. Further, "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 24].

The Factual Basis provides in relevant part:

> On or about January 7, 2021 in Alexander County within the Western District of North Carolina, Larry Elwood STEPTOE did knowingly and intentionally distribute a controlled substance, that is, twenty-eight (28) grams or more of a mixture and substance containing a detectable amount of cocaine base, more commonly known as "crack cocaine," a Schedule II controlled substance.
>
> On or about January 7, 2021 in Alexander County within the Western District of North Carolina, Larry Elwood STEPTOE did knowingly and intentionally distribute a controlled substance, that is, fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled substance.

[Doc. 22 at 1 (Factual Basis)] (paragraph numbers omitted).

A Rule 11 hearing came before a magistrate judge on February, 2022. [Doc. 48]. The Defendant stated under oath that he received a copy of the Indictment, discussed it with counsel, and understood the charges to which he was pleading guilty as well as his sentencing exposure. [Id. at 3-5]. The Defendant agreed that: he understood that pleading guilty may cause him to be

4

deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Defendant has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 5-6]. The Defendant acknowledged the rights he was waiving by pleading guilty. [Id. at 6-7].

The Plea Agreement was summarized in open court. [Id. at 8-11]. The Defendant confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 11]. The Defendant stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 12]. He admitted his guilt of Counts Seven and Eighth. [Id. at 7]. The Defendant stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 12]. The Defendant agreed that he had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services, stating "He's done a fine job." [Id.].

The Presentence Investigation Report (PSR) includes the information set forth in the Factual Basis. [Doc. 33 at ¶¶ 6-8]. It also includes a Statement of Relevant Conduct that sets forth detailed evidence regarding the Defendant's illegal conduct including a firearm deal, drug activity that involved at least 10,000 kilograms but less than 30,000 kilograms of converted drug weight. [Id. at ¶¶ 10-51]. The PSR scored the base offense level as 34 pursuant to U.S.S.G. 2D1.1(a)(5) because the drug amount totaled 15,780.69 kilograms of converted drug weight. [Id. at ¶ 34]. However, the Defendant qualified as a career offender because he had at least two prior felony convictions for a crime of violence or a controlled substance offense. [Id. at ¶ 63]. Accordingly,

5

the base offense level was 37. [Id.]. Three levels were deducted for acceptance of responsibility. [Id. at ¶¶ 64-65]. This resulted in an offense level of 34. [Id. at ¶ 66]. The Defendant had six criminal history points and two points were added because he committed the instant offense while he was under a criminal justice sentence. [Id. at ¶¶ 112-113]. This resulted in eight criminal history points and a criminal history category of IV, however, the criminal history category for career offenders is VI. [Id. at ¶ 114]. The resulting advisory guideline range was 262 to 327 months' imprisonment. [Id. at ¶ 145]. The PSR notes the impact of the Plea Agreement as follows:

> The Plea Agreement stipulates that the Government will withdraw the Notice pursuant to 21 U.S.C. § 851 at the time of sentencing. When the 851 Notice is withdrawn, the statutory penalty for Count 7s will be 5 to 40 years with a fine of $5,000,000 and a supervised release term of at least 4 years; and the statutory penalty for Count 8s will be 10 years to life with a fine of $10,000,000 and a supervised release term of at least 5 years. The guideline range remains unchanged. Additionally, the defendant pled guilty to Counts 7s and 8s for the eventual dismissal of all other counts. Had he been convicted of all counts, the counts would have been grouped with no change of the guidelines.

[Id. at ¶ 146].

Counsel filed objections to the PSR challenging, *inter alia*, the application of the career offender enhancement. [Docs. 31, 35]. A sentencing hearing came before the Court on July 13, 2022. [Doc. 49]. The Defendant stated that he had read the PSR, that he "somewhat" understood it, and that he had all the time he would like to discuss it with counsel. [Id. at 2-3]. Defense counsel argued that one of the Defendant's prior convictions did not qualify as a career offender predicate, noting that the Defendant's advisory range without the enhancement would be 151 to 188 months' imprisonment. [Id. at 9]. The Court overruled the objection based on binding case law. [Id. at 3-5]. The parties requested a sentence at the low end of the guideline range. [Id. at 10-15]. The Court adopted the PSR without change and found that varying downward to "somewhere between your career offender guideline and your noncareer offender guideline" is appropriate after considering

6

all of the relevant factors. [Id. at 9, 14-17]. It sentenced the Defendant to 240 months' imprisonment for each count, concurrent, followed by five years of supervised release. [Id. at 18-19; Doc. 39 (Judgment); see Doc. 40 (Statement of Reasons)].

The Defendant appealed his sentence. The Fourth Circuit Court of Appeals granted the Government's Motion to Dismiss because of the Defendant's voluntary appellate waiver. United States v. Steptoe, 2023 WL 11284209 (4th Cir. Dec. 14, 2023). The United States Supreme Court denied certiorari on June 10, 2024. Steptoe v. United States, 2024 WL 2883846 (June 10, 2024).

The Defendant filed the instant § 2255 Motion to Vacate on August 9, 2024.[1] [Doc. 56]. He argues that (renumbered and restated): (1) ineffective assistance of counsel rendered his guilty plea involuntary; (2) counsel was ineffective for advising the Defendant that he could not withdraw his plea based on the career offender enhancement; and (3) counsel was ineffective for advising him that he could not appeal his sentence. [Docs. 56, 56-1, 56-2]. The Defendant states that he would have proceeded to trial had counsel performed effectively. [Doc. 56-1 at 4; Doc. 56-2 at 11]. The United States filed a Response opposing relief. [Doc. 60]. The Defendant has not replied and the time to do so has expired. Accordingly, this matter is ripe for disposition.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

7

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the Defendant is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

**III.     DISCUSSION**[2]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a defendant must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

---

[2] The Defendant's claims have been reorganized and restated. Any argument or subclaim that is not specifically addressed has been considered and rejected.

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, a defendant "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the defendant fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

### A. Involuntary Plea

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see Lee v. United States, 582 U.S. 357, 364-65 (2017) (the question is whether the defendant would have gone to trial, not whether the result

9

of trial would have been different than the result of the plea bargain). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

As a preliminary matter, the Defendant's contention that counsel should have advised him to plead guilty to Count One, rather than to Counts Seven and Eight, fails because no such plea offer existed. [See Doc. 60-2 at 1-4]; see generally Missouri v. Frye, 566 U.S. 134, 148-49 (2012) (a defendant has no right to be offered a plea or for the judge to accept it). The Defendant contends that counsel failed to adequately investigate the sentencing consequences of pleading guilty to Counts Seven and Eight and misadvised him about the same. The Defendant stated under oath at the Rule 11 hearing that he fully understood the minimum and maximum penalties he faced for Counts Seven and Eight, including the possibility of a career offender enhancement, that he would be unable to withdraw the plea even if the sentence was harsher than he expected, and that nobody promised him a lenient sentence in exchange for his plea. [Doc. 48 at 9-12]. His present self-serving contentions that counsel promised a sentence between 151 and 188 months' imprisonment without a career offender enhancement are, therefore, rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

The Defendant has also failed to demonstrate prejudice. He conclusively contends that he would have insisted on a trial had counsel performed effectively. However, it would not have been

10

objectively reasonable for him to proceed to trial under the circumstances of this case. The Plea Agreement was extremely favorable in that it led to the dismissal of 23 serious charges, the withdrawal of the § 851 Notice, and a three-level reduction in the offense level for acceptance of responsibility. [See Doc. 33 at ¶ 146]. Further, there was overwhelming evidence of Defendant's guilt as outlined in the Factual Basis and the PSR. It would not have been objectively reasonable, under these circumstances, for the Defendant to reject the highly favorable plea and proceed to trial. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming). The Defendant has, therefore, failed to establish that ineffective assistance of counsel rendered his guilty plea involuntary.

**B. Motion to Withdraw**

A motion to withdraw a guilty plea is discretionary where a defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000) (there is no "absolute right" to withdraw a guilty plea, and a district court has discretion to decide whether "fair and just" reasons exist); United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc) (holding that an appropriately conducted Rule 11 hearing raises a strong presumption that the plea is final and binding, and articulating a non-exhaustive list of factors in considering a motion to withdraw).

Here, the Defendant pleaded guilty to Counts Seven and Eight after acknowledging that he would not be allowed to withdraw his plea even if the sentence was higher than he anticipated. [Doc. 21 at ¶¶ 8, 14]. The Defendant's disagreement with the career offender enhancement did

11

not provide a justification for withdrawing the plea, and counsel did not perform deficiently by so informing him. Nor can the Defendant demonstrate prejudice. An attempt to withdraw the plea would have failed for the reasons already discussed. Further, an attempt to withdraw the plea may have been construed as a breach of the Plea Agreement that would have relieved the Government of its obligations to *inter alia* dismiss the remaining charges and to withdraw the § 851 Notice, without relieving the Defendant of his own obligations under the Plea Agreement. [Id. at ¶¶ 4-5, 15]. Counsel was not ineffective for advising the Defendant not to pursue a meritless and potentially harmful motion to withdraw. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); Lockhart, 506 U.S. at 374 (there is no prejudice where counsel fails to make an objection that is "wholly meritless under current governing law")..

### C. Appeal

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86

12

(2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Counsel was not ineffective for advising him that he could not challenge the career offender sentence on direct appeal because the advice was accurate. [See Doc. 21 at ¶ 18]. Moreover the Defendant did, in fact, attempt to appeal his sentence but the Fourth Circuit dismissed it as barred by the Plea Agreement's appellate waiver. See Steptoe, 2023 WL 11284209, at *1. The Defendant has failed to explain what more counsel could have done in this regard that had a reasonable probability of benefitting him in any way. The Defendant's claim that counsel provided ineffective assistance with regards to an appeal is, therefore, rejected.

## IV.    CONCLUSION

For the foregoing reasons, the Defendant's Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Defendant's § 2255 Motion to Vacate [Doc. 56] is **DISMISSED AND DENIED.**

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a Defendant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a Defendant must establish both that the dispositive

13

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: November 20, 2024

Kenneth D. Bell
United States District Judge